# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JEFF SEIPEL and TOM VEVEA, as Trustees of the Minnesota Laborers Health and Welfare Fund and Minnesota Laborers Pension fund; JAMES BRADY and KEITH KRAMER, as Trustees of the Minnesota Laborers Vacation Fund; TOM VEVEA and GARY REED, as Trustees of the Construction Laborers' Education, Training and Apprenticeship Fund of Minnesota and North Dakota; and RONALD THORNBURG and CHRIS BORN, as Trustees of the Minnesota Laborers Employers Cooperation and Education Trust; and each of their successors, <br><br> Plaintiffs, <br><br> v. <br><br> MARSDEN BLDG MAINTENANCE, L.L.C., <br><br>    Defendant and Third-Party Plaintiff, <br><br> v. <br><br> ARISTEO SERVICES, LLC, a/k/a Aristeo Construction, and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 26, <br><br>    Third-Party Defendants. | Civil No. 08-6237 (JRT/AJB) <br><br><br><br><br><br><br><br><br> **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS FIRST AMENDED THIRD-PARTY COMPLAINT AND/OR FOR SUMMARY JUDGMENT** |

Henry Helgen, **ANDERSON, HELGEN, DAVIS & NISSEN, LLC**, 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402, for plaintiffs.

Mark J. Girouard and Matthew E. Damon, **NILAN JOHNSON LEWIS, P.A.**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant and third-party plaintiff Marsden Bldg Maintenance, LLC.

Michael G. Latiff, **BUTZEL LONG**, 150 West Jefferson Ave., Suite 100, Detroit, MI 48226, and Gregory J. Stenmoe, **BRIGGS AND MORGAN, P.A.**, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for third-party defendant Aristeo Services.

Richard L. Kaspari, **METCALF, KASPARI, ENGDAHL & LAZARUS, P.A.**, 1660 South Highway 100, Suite 333, Minneapolis, MN 55416, for third-party defendant Service Employees International Union, Local 26.

Plaintiff Jeff Seipel and other Trustees of several multi-employer employee welfare funds ("plaintiffs") brought this action against Marsden Bldg Maintenance, L.L.C. ("Marsden") for failure to make contributions to certain employee benefit funds on behalf of people who performed cleaning services at the Ford Motor Company's Plant in Saint Paul, Minnesota (the "Ford Plant"). Marsden, a cleaning services subcontractor, brought a third-party complaint against Aristeo Services, LLC ("Aristeo"), with which it had contracted to perform the cleaning services, alleging misrepresentation and breach of the covenant of good faith and fair dealing. Aristeo filed a motion to dismiss the third-party complaint and/or for summary judgment. For the reasons stated below, the Court denies the motion.

## BACKGROUND

Plaintiffs are Trustees of various multi-employer employee welfare funds, including the Minnesota Laborers Health and Welfare Fund, the Minnesota Laborers Pension Fund, the Minnesota Laborers Vacation Fund, the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, and the Minnesota Laborers Employers Cooperation and Education Trust (collectively, the

"Laborers Funds"). (Compl. ¶¶ 1-6, Docket No. 1.) The Laborers Funds benefit members of the Laborers International Union of North America, AFL-CIO ("Laborers").

Marsden is a Minnesota limited liability company located in Saint Paul, Minnesota. (Answer ¶ 3, Docket No. 3; First Am. Third-Party Compl. ¶ 6, Docket No. 33.) Marsden primarily provides "general cleaning and custodial" services to its clients. (First Am. Third-Party Compl. ¶ 9, Docket No. 33.) Those services include vacuuming, mopping floors, buffing, wiping surfaces, dusting, and emptying waste receptacles. (*Id.*) Marsden also sporadically provides "final construction cleaning" services to clients. (*Id.*) "Final construction cleaning" involves the removal of construction debris from a construction site and similar cleaning immediately after construction is complete and immediately before the building's owner takes occupancy. (*Id.*)

For approximately thirty years, Marsden has recognized Service Employees International Union Local 26 ("SEIU") as the exclusive bargaining agent for its employees engaged in contract cleaning in the Minneapolis-Saint Paul Metropolitan Area. (*Id.* ¶ 10.) Marsden is a signatory to several collective bargaining agreements between SEIU and the Minneapolis-St. Paul Service Contract Cleaners Association ("SEIU CBAs"). (*Id.* ¶¶ 11-12.) Under the terms of the SEIU CBAs, Marsden provides certain fringe benefits directly to its employees, including paid vacation, holiday pay, and health insurance. (*Id.* ¶ 13.)

On October 4, 2005, Marsden executed a document by which it agreed to be bound by a collective bargaining agreement called the Commercial Cleaning Services

Agreement ("2005 CCSA"). (Compl. ¶ 10, Docket No. 1; Answer ¶ 6, Docket No. 3.) The 2005 CCSA was in effect through at least April 30, 2007. (Compl. ¶ 10, Docket No. 1.) Marsden alleges that it agreed to be bound by the 2005 CCSA only with respect to "construction clean and windows" work. (First Am. Third-Party Compl. ¶ 36, Docket No. 33.)

Plaintiffs allege that after April 30, 2007, the terms of the 2005 CCSA renewed for a period of one year. (Compl. ¶ 11, Docket No. 1.) There were subsequent Commercial Cleaning Services Agreements for 2007 and 2010 ("2007 CCSA" and "2010 CCSA"). (*See* Answer ¶ 10, Docket No. 3.) The CCSAs state on the first page that the agreement binds "[a]ll companies or individuals that perform final commercial cleaning services on construction sites," and that the agreement "covers only companies or individuals that perform final commercial cleaning services as a regular business enterprise." (Lovejoy Aff. Ex. B at P4, Docket No. 51; *id.* Ex. C at P14.) Marsden denies that it was generally subject to the terms of the 2007 CCSA or the 2010 CCSA. (Answer ¶ 10, Docket No. 3.)

Aristeo is a limited liability company doing business in Minnesota. (First Am. Third-Party Compl. ¶ 7, Docket No. 33.) It contracts to provide management and other services to the Ford Plant in Saint Paul, Minnesota. (Def.'s Mem. in Opp'n to Mot. To Dismiss at 4, Docket No. 50.) Aristeo is a party to a National Maintenance Agreement ("NMA") that requires it to subcontract only with companies that have also signed the NMA. (First Am. Third-Party Compl. ¶ 16, Docket No. 33.) Laborers is also a party to the NMA. (Mem. Supp. Mot. to Dismiss at 6, Docket No. 40.)

On or about January 8, 2007, Marsden entered into a subcontract with Aristeo to provide general office and industrial building cleaning and custodial services at the Ford Plant. (First Am. Third-Party Compl. ¶ 14, Docket No. 33.) The subcontract references the NMA, but Aristeo never provided Marsden with a copy of the NMA and neither party ever mentioned the NMA. (*Id.* ¶ 15.) Marsden alleges that Aristeo never disclosed the contents of the NMA to Marsden and never told Marsden that Marsden would be required to sign the NMA in order to perform under the subcontract. (*Id.* ¶ 17.)

Marsden employs between twenty and thirty employees at any given time to work at the Ford Plant, and all of those employees are SEIU members entitled to receive direct benefit payments under the SEIU CBA. (*Id.* ¶ 18.) Marsden alleges that Aristeo supervises some of the Marsden employees who work at the Ford Plant. (*Id.* ¶ 41.)

On August 27, 2007, Marsden executed a Commercial Cleaning Acceptance of Agreement ("CCAA") with the Laborers District Council of Minnesota and North Dakota, with respect to "construction final clean" work only. (*Id.* ¶ 35.) Marsden alleges that in signing the CCAA, it agreed to be bound by the 2007 CCSA and the 2010 CCSA, but only with respect to work that is covered by the CCAA and that is "construction final clean" work. (*Id.* ¶ 35.) Marsden alleges that, "[t]o the best of Marsden's knowledge, Marsden employees working at the Ford Plant never provided any services within the scope of the CCSAs" and "never provided any 'construction final clean' services." (*Id.* ¶¶ 38-39.) According to Marsden, Aristeo informed Marsden that the employees never provided any "construction final clean" services and that the Ford Plant had not been a construction site during the time Marsden employees were working there. (*Id.* ¶¶ 41-42.)

In April 2008, Laborers learned of the work that Marsden was doing at the Ford Plant and concluded that it was subject to the NMA. (*Id.* ¶¶ 22-24.) In April and May of 2008, Laborers Local 132 filed grievances against Marsden, claiming that it was improper that the Marsden employees working at the Ford Plant were not members of Local 132. (*Id.* ¶ 25.) Laborers then informed the Laborers Funds that Marsden was obligated to contribute to the Laborers Funds for the work that Marsden employees did at the Ford Plant. (*Id.* ¶ 27.)

The Laborers Funds conducted an initial audit and concluded that Marsden owed fringe benefit contributions for the audited period. (Compl. ¶ 19, Docket No. 1.) After a subsequent review of Marsden's records, plaintiffs claimed that Marsden owed additional fringe benefit contributions for the audited period. (*Id.* ¶ 22; Answer ¶ 14.)

Plaintiffs filed suit on December 2, 2008, alleging that Marsden owes the Laborers Funds $1,211,733.57 for fringe benefit contributions due pursuant to the audit. (Compl. at 8, Docket No. 1.) On September 28, 2009, Marsden filed its First Amended Third-Party Complaint against Aristeo and SEIU. (First Am. Third-Party Compl., Docket No. 33.) The third-party complaint alleges that Aristeo breached the covenant of good faith and fair dealing by failing to disclose material facts relating to the parties' business arrangement, including failure to disclose that Aristeo was subject to the NMA, that construction took place at the Ford Plant, and that Aristeo knew that the Laborers Funds would seek fringe benefit contributions for hours worked by Marsden employees at the Ford Plant. (*Id.* ¶¶ 46-50.) The third-party complaint further alleges that Aristeo engaged in intentional and negligent misrepresentation. It also seeks a declaratory

judgment that, if the Court finds that Marsden is required to make contributions to the Laborers Funds, Marsden is not bound by its contract with SEIU for that work. It also alleges that SEIU engaged in negligent misrepresentation by representing to Marsden that it had the authority to contract with Marsden with regard to the employment of its members assigned to work at the Ford Plant. Finally, it alleges unjust enrichment against SEIU and requests disgorgement of the benefit payments Marsden made to SEIU employees in the event the Court orders Marsden to make payments to the Laborers Funds for those employees.

On October 15, 2009, Aristeo filed a motion to dismiss the First Amended Third-Party Complaint and/or for Summary Judgment. (Docket No. 39.) Aristeo argues that the Court lacks subject matter jurisdiction over Marsden's third-party claims against Aristeo because Marsden has failed to state proper third-party claims pursuant to Federal Rule of Civil Procedure 14, and that Marsden's third-party claims seeking contribution or indemnification from Aristeo fail as a matter of law because plaintiffs cannot recover back payments under the NMA.

On October 27, 2009, plaintiffs notified Marsden for the first time that they considered Marsden to be bound by the NMA. On that day, plaintiffs served Marsden with their Second Supplemental Answers to Defendant's First Set of Interrogatories, which allege that Marsden was bound by the NMA pursuant to Marsden's contract with Aristeo. (Lovejoy Aff. Ex. A, Docket No. 51.)

## DISCUSSION

I. MOTION TO DISMISS

   A. Standard of Review

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To survive a motion to dismiss, however, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

   B. There Is a Sufficient Nexus Between the Underlying Claim Against Marsden and Marsden's Third-Party Claims Against Aristeo.

"Rule 14(a) generally should be liberally construed in favor of impleading a third party in order to simplify and expedite the litigation process by permitting related claims to be disposed of in one action." *Ford Motor Credit Co. v. U.S. Leasing & Sales, Inc.*,

No. 02-2925, 2004 WL 1447937, at *2 (D. Minn. June 10, 2004); *see also Deutsche Bank Nat'l Tr. Co. v. Tyner*, 233 F.R.D. 460, 462 (D.S.C. 2006) ("[The purpose of Rule 14 is to accomplish] in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." (internal quotation marks omitted)). A third-party claim is only permissible, however, "if that third person's liability on that claim is in some way dependent upon the outcome of the main claim" and "is secondary or derivative thereto." *United States v. Olavarrieta*, 812 F.2d 640, 643 (8th Cir. 1987); *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (8th Cir. 1988). It is not sufficient that the third-party claim "arises out of the same general set of facts as the main claim." *Olavarrieta*, 812 F.2d at 643.

Aristeo argues that Marsden's third-party claim "fails to establish a connection between the Laborers Funds' claims" and the claims Marsden makes "against Aristeo under the NMA because . . . [t]he Laborers Funds' Complaint <u>makes no reference to the NMA</u> . . . , and Marsden cannot be bound by the NMA when it has not signed or accepted it." (Mem. Supp. Mot. to Dismiss at 3, Docket No. 40.) Aristeo further argues that "[t]here is no legal or factual nexus between" Marsden's "potential liability to the Laborers Funds under the [CCSAs] and the claim that Aristeo is somehow liable for contribution or indemnification to Marsden because of the NMA." (*Id.* at 10.)

If the Court allows plaintiffs to go forward with their new theory of liability under the NMA, as articulated in their Second Supplemental Answers to Defendant's First Set

of Interrogatories,[1] then Marsden would be able to state a derivative claim against Aristeo. Under such a theory, Aristeo's alleged failure to disclose material information about the applicability of the NMA to Marsden's work at the Ford Plant could support Marsden's third-party claims against Aristeo.

Even if Marsden is liable under the CCSAs, rather than under the NMA, Marsden could still state a derivative claim against Aristeo for failing to disclose material information about the nature of the cleaning work at the Ford Plant. Under Marsden's theory of derivative liability, if Marsden had known that there was "construction final clean" work at the Ford Plant, it would have monitored which workers were engaged in such work and it would have determined which employees could continue to receive SEIU benefits directly and which employees were covered by the CCSAs. Aristeo's failure to disclose that potentially material information could support Marsden's third-party claims against Aristeo, regardless of the fact that Aristeo is not a party to the CCSAs or the CCAA.

Aristeo argues that "Marsden fails to allege that Aristeo had any knowledge of the content of Marsden's collective bargaining agreements in terms of construction limitations, thereby negating any wrongful intent or knowledge on the part of Aristeo."

---

[1] The Court recognizes that both Marsden and Aristeo oppose any attempts by plaintiffs to amend the complaint to include claims based on the NMA. Nonetheless, the Court has not determined whether plaintiffs are barred from advancing this theory of liability, and therefore it would be premature to conclude that the NMA is irrelevant to plaintiffs' claims.

Aristeo contends that it is improper for Marsden to rely on the new interrogatory responses in response to the motion to dismiss. (Reply Mem. in Supp. of Mot. to Dismiss at 3, Docket No. 52.) As Aristeo recognizes, however, Rule 12(b)(1) allows the Court to weigh evidence to determine whether it has jurisdiction over the third-party claims. *See Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990). (*See* Mem. Supp. Mot. to Dismiss at 7-8, Docket No. 40.)

(Mem. Supp. Mot. to Dismiss at 3, Docket No. 40.) Aristeo argues that because Marsden "fails to allege that Aristeo even had knowledge of the terms and work restrictions set forth in the CBA to which Marsden was bound with the Laborers Funds," the third-party complaint cannot support Marsden's third-party claims against Aristeo "on the grounds that Aristeo concealed the existence of any construction from Marsden." (*Id.* at 15.)

It is premature to conclude that Marsden's third-party claims against Aristeo are barred for failure to allege that Aristeo was aware of the terms of the CCSAs or the CCAA. The third-party complaint alleges that "Aristeo failed to disclose the material fact that the Laborers' union and the Funds would seek fringe benefit contributions for hours worked by Marsden Employees at the Ford Plant." (First Am. Third-Party Compl. ¶ 49.) This allegation does not specify whether the Laborers Funds would seek benefits under the NMA or the CCSAs, but at this stage in the litigation it is sufficient that Marsden alleges that Aristeo knew that the Laborers Funds would seek benefit contributions from Marsden and that Aristeo failed to disclose that information. Moreover, even if Aristeo was not aware of the terms of the CCSAs or the CCAA, Aristeo was aware of the NMA and that the NMA allegedly required Aristeo to hire subcontractors who were also parties to the NMA. The trier of fact could conclude that such information is material, regardless of whether Aristeo knew of the terms of the CCSAs or the CCAA.

### C. Marsden's Third-Party Claims Against Aristeo Satisfy the *Iqbal* Plausibility Standard.

#### 1. Breach of Contract

Aristeo argues that the third-party complaint does not satisfy the *Iqbal* plausibility standard because it "contains no allegations about which contractual provisions have been breached by Aristeo and how they have been breached."[2] (Mem. Supp. Mot. to Dismiss at 3, Docket No. 40.) The third-party complaint expressly states that the contract between Marsden and Aristeo has an implied covenant of good faith and fair dealing, and that Aristeo breached the implied covenant by failing to disclose material information. The third-party complaint specifies that the material information includes: that Aristeo was a party to the NMA, that there was construction at the Ford Plant,[3] and that the Laborers Funds would seek fringe benefit contributions for the hours worked at the Ford Plant. (First Am. Third-Party Compl. ¶¶ 47-49, Docket No. 33.) Those allegations are sufficient to survive Aristeo's motion to dismiss.

#### 2. Misrepresentation

Aristeo argues that "Marsden cannot and does not state that construction has taken place at the Ford Plant." (Mem. Supp. Mot. to Dismiss at 3, Docket No. 40.) Aristeo contends that Marsden's position in the third-party complaint "completely contradicts its

---

[2] Aristeo argues for the first time in its reply brief that Marsden's claim for breach of the implied covenant of good faith and fair dealing is barred because Marsden is also claiming breach of contract. (Reply Mem. in Supp. of Mot. to Dismiss at 6, Docket No. 52.) Marsden, however, has only one breach of contract claim, and the only "term" that Marsden alleges that Aristeo breached is the implied covenant of good faith and fair dealing.

[3] Marsden denies that there was construction at the Ford Plant, but it advances this argument in the alternative, recognizing that plaintiffs and Marsden dispute this material fact.

defense in order to include intentional and negligent misrepresentation claims against Aristeo." (*Id.* at 14.)

Marsden is entitled to plead in the alternative, as it has done here. (*See* First Am. Third-Party Compl. ¶ 48, Docket No. 33 ("If any construction took place at the Ford Plant during the period that Marsden's employees worked there, that is an additional material fact that Aristeo failed to disclose to Marsden.")) At this stage in the litigation, Marsden need not "conclusively state whether construction was taking place at the Ford Plant" in order to state a claim against Aristeo. (*See* Mem. Supp. Mot. to Dismiss at 15, Docket No. 40.) If the trier of fact determines that there was construction at the Ford Plant, then Marsden will be able to state a claim against Aristeo for misrepresenting the nature of the work that Marsden employees performed. Marsden alleges that Aristeo supervised at least some Marsden employees working at the Ford Plant, and therefore Aristeo was allegedly aware of the type of work they were doing. Marsden further alleges that Aristeo affirmatively told Marsden that the Ford Plant was not a construction site, and that Marsden employees never provided any "construction final clean" services. If those allegations are established, and if the trier of fact concludes that there was construction at the Ford Plant and that Marsden employees did provide "construction final clean" services, then Marsden can state a claim for intentional and/or negligent misrepresentation. Therefore the Court denies Aristeo's motion to dismiss.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Aristeo Is Not Entitled to Summary Judgment.

Aristeo argues that summary judgment is appropriate because "there is no genuine issue of material fact that Marsden cannot be liable for, or seek contribution or indemnification for, past fringe benefits under the NMA." (Mem. Supp. Mot. to Dismiss at 3, Docket No. 40.) Aristeo contends that "[t]he NMA expressly provides that past back pay and damages cannot be awarded under the agreement," and "[t]herefore, even if the Laborers Funds are seeking relief under the NMA against Marsden . . . , they cannot recover past fringe benefits against Marsden, and in turn, Marsden cannot recover past fringe benefits from Aristeo based on the NMA." (*Id.* at 3-4.)

Aristeo is not entitled to summary judgment because the trier of fact could conclude that Marsden is liable for past fringe benefits under the 2007 CCSA and the

2010 CCSA, rather than under the NMA. Under that theory of liability, Aristeo could be derivatively liable[4] to Marsden for breach of the covenant of good faith and fair dealing or for negligent or intentional misrepresentation, regardless of the terms of the NMA.[5] Moreover, Marsden does not allege that Aristeo breached the NMA, and Marsden does not claim any rights arising under or created by the NMA (Mem. in Opp'n to Mot. to Dismiss at 23, Docket No. 50.) Therefore it is unclear whether there is any relevance to Aristeo's argument that the NMA does not allow a party to recover past fringe benefits.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Third-Party Defendant Aristeo Services, LLC's Motion to Dismiss the First Amended Third-Party Complaint and/or for Summary Judgment [Docket No. 39] is **DENIED**.

DATED: April 20, 2010  
at Minneapolis, Minnesota.

                                                 s/ John R. Tunheim  
                                                 JOHN R. TUNHEIM  
                                                United States District Judge

---

[4] Aristeo argues for the first time in its reply brief that "Marsden has failed to bring a separate cause of action for indemnification, or even plead any allegations demonstrating its entitlement to indemnification from Aristeo. There are no allegations in the First Amended Third-Party Complaint to support theories of express-contractual indemnity, implied-contractual indemnity, or statutory indemnity." (Reply Mem. in Supp. of Mot. to Dismiss at 4-5, Docket No. 52.) The First Amended Third-Party Complaint alleges that Aristeo's derivative obligations to Marsden are based on the implied covenant of good faith and fair dealing and on Aristeo's alleged misrepresentations to Marsden. Marsden does not need to allege that it has a contractual or statutory right to indemnification in order to recover on its derivative third-party claims.

[5] The Court notes that it would be premature to determine as a matter of law that the NMA precludes plaintiffs from recovering past fringe benefits under the NMA. Plaintiffs have not had the opportunity to brief the issue, and it is not clear whether the provisions Aristeo cites from the NMA pertain to claims for recovery of past fringe benefits brought before a court of law. (*See* NMA Art. VI, Latiff Aff. Ex. A, Docket No. 41; *id.* Art. I § 11.)